OPINION OF THE COURT
Joseph J. Maltese, J.
The decision and order on the motion and cross motions is as follows:
The defendants move and cross-move to compel the production of the social media files of the plaintiff, John Fawcett, Jr. The plaintiff cross-moves for a protective order preventing the production of his social media files. The motion and cross motion made by the defendants to compel the production of John Fawcett, Jr.’s social media files is denied. The plaintiffs cross motion for a protective order is also denied.
Facts
This is an action to recover for personal injuries allegedly sustained by the plaintiff, John Fawcett, Jr., a high school student, during an altercation with the defendant, Nicholas Altieri, another high school student, at a tennis match at St. Joseph by-the-Sea High School in Staten Island, New York. The plaintiff sets forth causes of action against the defendants for assault, battery, negligence and loss of services. The plaintiffs bill of particulars states that he sustained an injury to his right eye.
During the course of the litigation the defendants demanded “authorizations to permit the defendants to obtain full access to and copies of Plaintiffs current and historical records and/or information and photographs on Plaintiffs social media website pages, including but not limited to Facebook, MySpace, Friendster, Flickr, and any other social media websites.”
Defendants contend that the plaintiffs social media accounts are not publically viewable and they have been made private with no information available for public consumption. It is unclear when the plaintiff made his social media accounts private.
Discussion
This court must evaluate the relevance of social media accounts in the pretrial discovery phase of a civil action alleging *1024 personal injuries. While social media websites may be a relatively new phenomenon, the liberal interpretation of the words “material and necessary” in CPLR 3101 (a) remains applicable. The liberal interpretation of the words “material and necessary” requires disclosure, upon request, of any facts bearing on the controversy that will assist in the preparation for trial by sharpening the issues and reducing delay and prolixity. A party’s right to discovery is not unlimited, however, and may be curtailed when it becomes an unreasonable annoyance and tends to harass and overburden the other party.[1]
It is without dispute that plaintiffs who place their physical condition in controversy may not shield from disclosure material which is necessary for the defense of the action.[2] It is equally well accepted that discovery is permitted with respect to not only materials having to do with liability, but to damages as well.[3]
A survey of cases dealing with the production of social media accounts, in both the criminal and civil contexts, reveals a two prong analysis before courts compel the production of the contents of social media accounts. This inquiry requires a determination by the court as to whether the content contained on/in a social media account is “material and necessary”; and then a balancing test as to whether the production of this content would result in a violation of the account holder’s privacy rights.[4]
“Material and Necessary”
Setting aside the fact that John Fawcett, Jr. turned 18 years old, the plaintiff submits the affidavit of his mother Gina Fawcett to support his cross motion. In her affidavit she states that her son “stated to [her] that he has no specific memory of using, discussing this attack, or his injury using social media.” Furthermore, plaintiffs counsel argues that the access to the plaintiffs social media accounts sought by the defendants is not relevant to mount a defense against an allegation of civil assault, battery or negligence. However, to accept such an argument would ignore the defendants’ right to seek discovery relating to the damages John Fawcett, Jr. sustained as a result of this altercation. Plaintiff’s bill of particulars states that the *1025 injuries he sustained as a result of this incident will continue to affect him socially, educationally, economically, and in the way he pursues recreation into the future.
The Appellate Division, Second Department allows for broad discovery on the issue of damages where a plaintiff states a general loss of the enjoyment of life due to injuries sustained as a result of an accident. In Abdalla v Mazl Taxi, Inc., the Appellate Division, Second Department compelled a plaintiff to disclose his medical records pertaining to his diabetes based on his broad allegations contained in his bill of particulars, including the “claimed loss of enjoyment of life due to his current injuries.”[5] However, at this early stage in litigation it is unclear as to whether this information will yield “material and necessary” information, or whether it is merely a fishing expedition as the plaintiff suggests.
Social media websites, such as Facebook[6] and Twitter,[7] exist to allow individuals to interact with “real world” friends, relatives and those individuals sharing common interests that may be as close as your own town, or as far away as a distant continent. The court takes judicial notice that subscribers to these sites share their political views, their vacation pictures, and various other thoughts and concerns that subscribers deem fit to broadcast to those viewing on the Internet. Whether these broadcasts take the form of “tweets,” or postings to a user’s “wall,” the intent of the users is to disseminate this information. Judge Matthew Sciarrino, Jr. pointed out in his decision concerning an “Occupy Wall Street” protestor charged in the Criminal Court of New York County that “[i]f you post a tweet, just like if you scream it out the window, there is no reasonable expectation of privacy.”[8]
At the end of 2009, Facebook reset user privacy settings to default all profiles to public from private. In early 2010 after this setting change, Facebook’s president and founder Mark Zuckerberg, in an interview with TechCrunch, responded to the question “where is privacy on the web going?” as follows:
*1026 “When I got started in my dorm room at Harvard, the question a lot of people asked was ‘why would I want to put any information on the Internet at all? Why would I want to have a website?’
“And then in the last 5 or 6 years, blogging has taken off in a huge way and all these different services that have people sharing all this information. People have really gotten comfortable not only sharing more information and different kinds, but more openly and with more people. That social norm is just something that has evolved over time.
“We view it as our role in the system to constantly be innovating and be updating what our system is to reflect what the current social norms are.
“A lot of companies would be trapped by the conventions and their legacies of what they’ve built, doing a privacy change — doing a privacy change for 350 million users is not the kind of thing that a lot of companies would do. But we viewed that as a really important thing, to always keep a beginner’s mind and what would we do if we were starting the company now and we decided that these would be the social norms now and we just went for it.”[9]
Mark Zuckerberg and Sheryl Sandberg extolled the benefits of these multilayered “privacy” settings in a November 7, 2011 television interview with Charlie Rose.[10] However, these privacy settings did not prevent the president of the Queer Chorus at the University of Texas to add two students to a Facebook discussion group which “outed” them to all of their Facebook friends, regardless of the preset privacy settings.[11]
The Appellate Division, First Department held in Patterson v Turner Constr. Co. that the materials posted on a Facebook page would not be shielded from discovery in a civil matter “merely because plaintiff used the service’s privacy settings to restrict *1027 access” if the material is relevant to the litigation.[12] These materials may be subject to production just as material from a personal diary may be discoverable.[13] While the ultimate privacy and subsequent disclosure of social media postings are disputable, the facts in this case are not developed to either compel or preclude their discovery. There must be a clear factual predicate in order to compel the production of social media records from the defendants or authorizations for the production of that material from certain social media providers.[14] Consequently, on the facts before this court depositions must be conducted before one can properly determine whether the plaintiff should be compelled to produce social media records; and conversely, whether the defendants should be precluded from accessing this information.
Conclusion
Electronic discovery issues were once nearly the exclusive province of commercial litigation involving corporate players. However, with the expansion of the use of mobile phones that are connected to the Internet, and the overall ease of access to broadband Internet connections at home, electronic discovery will quickly enter into actions where it was once thought irrelevant. Facebook’s Mark Zuckerberg is correct that members of society continue to share more of their thoughts, secrets, mundane musings, photos and videos of their personal lives on social media sites. Perhaps this phenomenon is driven by feelings of anonymity in the online environment, where social media giants perpetuate the mantra that “your privacy is important.”[15] But, as courts have previously determined, this privacy is not absolute. Information posted in the open on social media accounts is freely discoverable and does not require court orders to disclose it. However, this court will not go so far as to hold that all social media records are material and necessary based solely on the fact that many people avail themselves to these social media sites. In order to obtain a closed or private social media account by a court order for the subscriber to execute an authorization for their release, the adversary must show with *1028 some credible facts that the adversary subscriber has posted information or photographs that are relevant to the facts of the case at hand. The courts should not accommodate blanket searches for any kind of information or photos to impeach a person’s character, which may be embarrassing, but are irrelevant to the facts of the case at hand.
The party requesting the discovery of an adversary’s restricted social media accounts should first demonstrate a good faith basis to make the request. Absent some facts that the person disclosed some information about the subject matter of the pending lawsuit, granting carte blanche discovery of every litigant’s social media records is tantamount to a costly, time consuming “fishing expedition,” which the courts ought not condone. Moreover, asking courts to review hundreds of transmissions “in camera” should not be the all purpose solution to protect the rights of litigants. Courts do not have the time or resources to be the researchers for advocates seeking some tidbit of information that may be relevant in a tort claim. While several courts have frequently assigned the “in camera” review to “special masters,” the fees to be paid those special masters should be paid by the party seeking such discovery in a tort case, but may be shared by the parties in a commercial or matrimonial matter.
With the volume of cases pending before our courts, simply requesting authorizations for all social media from all or most of the litigants will create an unmanageable volume of documents to be reviewed in the hope that some information directly relevant to the case will be uncovered. More likely, the information obtained would be irrelevant to the actual facts of the case, but may be used in an attempt to discredit the adversary with collateral matters. As a matter of judicial policy, such a fishing expedition is not a sufficient basis to open the floodgates of meandering thoughts or silly postings to be used to impeach a party in a simple assault or negligence action without any good cause to believe that any incriminating statement was ever made and publicized in the social media. These are not matters of national security or part of a criminal investigation. This is a civil tort matter of a minor assault that should have a good faith basis other than supposition, hope or speculation that some comment was made that may be relevant to the case at hand.
Therefore, the parties should proceed to discover the facts of the case by way of depositions or other investigatory or surveillance means.
*1029 Accordingly, it is hereby ordered, that the motion made by the defendant St. Joseph by-the-Sea High School and the cross motion made by Nicholas Altieri, Gerard L. Altieri and Laura Altieri to compel the production of social media accounts of John Fawcett, Jr. is denied with leave to renew after the completion of depositions; and it is further ordered, that the cross motion made by the plaintiffs is denied with leave to renew upon the completion of depositions.

. See Harrison v Bayley Seton Hosp., 219 AD2d 584 (2d Dept 1995).

. Hoenig v Westphal, 52 NY2d 605 (1981).

. Walker v City of New York, 205 AD2d 755 (2d Dept 1994).

. See People v Harris, 36 Misc 3d 613 (Crim Ct, NY County, Apr. 20, 2012); People v Harris, 36 Misc 3d 868 (Crim Ct, NY County, June 30, 2012); United States v Meregildo, 883 F Supp 2d 523 (SD NY, Aug. 10, 2012).

. 66 AD3d 803, 804 (2d Dept 2009).

. Facebook is a social media site designed to allow users to post messages on a “wall,” play interactive games, share pictures and join multiple groups.

. Twitter is a social media site that allows users to “tweet” messages to their followers in 140 characters or less. Twitter is used not just by individuals but also as an outlet for news sources, and different governmental and non-governmental entities.

. People v Harris, 36 Misc 3d 868, 874 (2012).

. Huffington Post, Facebook’s Zuckerberg Says Privacy No Longer A ‘Social Norm’, http://www.huffingtonpost.com/2010/01/ll/facebookszuckerberg-the_n_417969.html?view=print & comm_ref=false (accessed Oct. 25, 2012).

. Charlie Rose, Exclusive Interview with Facebook Leadership: Mark Zuckerberg, CEO/Co-Founder & Sheryl Sandberg, COO, http:// www.charlierose.com/view/interview/11981 (accessed Oct. 25, 2012).

. Geoffrey A. Fowler, When the Most Personal Secrets Get Outed on Face-book, Wall Street Journal, http://online.wsj.com/article/SB10000872396390444 165804578008740578200224.html (accessed Oct. 23, 2012).

. 88 AD3d 617, 618 (1st Dept 2011).

. Id.-, see also Faragiano v Town of Concord, 294 AD2d 893 (4th Dept 2002).

. McCann v Harleysville Ins. Co. of N.Y., 78 AD3d 1524 (4th Dept 2010).

. See generally Charlie Rose, Exclusive Interview with Facebook Leadership: Mark Zuckerberg, CEO/Co-Founder & Sheryl Sandberg, COO, http:// www.charlierose.com/view/interview/11981 (accessed Oct. 25, 2012).