[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 1, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13687

_____

D. C. Docket No. 04-00515-CV-FTM-33-SPC

MICHAEL SNOW,

Plaintiff-Appellant,

versus

DIRECTV, INC., a California corporation,
STUMP, STOREY, CALLAHAN, DIETRICH & SPEARS, P.A.,
a Florida Professional Association,
YARMUTH, WILSDON & CALFO, PLLC,
a Washington Professional Limited Liability Company,
JOHN DOES, 1-25,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 1, 2006)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

WILSON, Circuit Judge:

Michael Snow brought an action under the Stored Communications Act (the "SCA"), 18 U.S.C. § 2701 et seq., against DirecTV, Inc., a California company; Stump, Story, Callahan, Dietrich & Spears, P.A. ("Stump"), a Florida law firm; Yarmuth, Wilsdon & Calfo, PLLC ("Yarmuth"), a State of Washington law firm; and 25 unknown individuals. Snow alleged that employees of DirecTV, Stump, and Yarmuth accessed his website's electronic bulletin board without authorization. The district court dismissed the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, reasoning that electronic bulletin boards are not "in electronic storage," and, thus, are not protected by the SCA. *See* 18 U.S.C. §§ 2510(17), 2701. We agree with the district court that Snow's complaint fails to state a cause of action for which relief can be granted, but on a different ground: Snow's complaint fails to allege, as the SCA requires, that the website was configured to not be readily accessible by the general public. As to Yarmuth's dissmissal for lack of personal jurisdiction, we also affirm.

## I. BACKGROUND

DirecTV has been involved in a nationwide effort to stop the pirating of its encrypted satellite transmissions by individuals with "pirate access devices" who intercept the transmissions without paying fees to DirecTV. DirecTV hired

2

Yarmuth, a law firm with its sole office in Seattle, Washington, to help with the effort. As part of its strategy, DirecTV initiated thousands of anti-piracy actions, hundreds of which were filed in Florida federal district courts.[1] Yarmuth occasionally has represented DirecTV in Florida courts alongside local Florida counsel retained by DirecTV. Stump, a Florida law firm, also has represented DirecTV in Florida anti-piracy actions, one of which involved Snow as a defendant. DirecTV's action against Snow was eventually dismissed without prejudice.

Snow's complaint alleges that he created his non-commercial website, *http://www.stop-corporate-extortion.com* (the "SCE website" or "Snow's website"), as a "private support group" website for "individuals who have been, are being, or will be sued by any Corporate entity." Snow's website allows its members to share messages with each other through an electronic bulletin board. The language on the website's homepage "expressly forbids access by DIRECTV and its agents." To gain access, one must register, create a password, and agree to additional terms that affirm the non-association with DirecTV. A person clicking "I Agree to these terms" may enter into, view, and participate in the electronic

---

[1] Snow submitted documentation showing over 1,800 cases pending in Florida district courts with DirecTV as a party. This number does not include the countless demand letters sent on DirecTV's behalf to individuals suspected of pirating DirecTV's satellite transmissions.

bulletin board. A person clicking "I do not agree to these terms" is re-directed to the registration page and cannot proceed to the electronic bulletin board.

On multiple occasions, Snow alleges, employees of DirecTV, Yarmuth, and Stump accessed his website and viewed its electronic bulletin board, in excess of their authority. After discovering the unauthorized accesses, Snow filed his complaint.

Yarmuth moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. The other defendants also moved for dismissal pursuant to Rule 12(b)(6), claiming that Snow failed to state a cause of action upon which relief can be granted because, as a matter of law, the messages stored on Snow's electronic bulletin board are not electronic communications in electronic storage as contemplated by the SCA.[2] In addition to granting both motions to dismiss, the district court denied a request by Snow for discovery on the jurisdiction issue. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a district court's grant of a motion to dismiss for failure to state a claim. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1187 (11th Cir. 2002).

---

[2] Yarmuth joined the motion conditioned on the denial of its Rule 12(b)(2) motion.

We review the district court's determination that it did not have personal jurisdiction over a defendant de novo. *Meier ex rel Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir. 2002). When, as here, a district court does not conduct a discretionary evidentiary hearing on a Rule 12(b)(2) motion, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant by presenting enough evidence to withstand a motion for directed verdict. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Id.* Where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in the plaintiff's favor. *Id.*

### III. DISCUSSION

## A.   Personal Jurisdiction Over Yarmuth

In federal question cases arising under a federal statute silent as to service of process, Rule 4(e) of the Federal Rules of Civil Procedure requires that we determine both jurisdiction and service of process using state amenability standards, that is, the state long-arm statute. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). Our analysis, however, goes beyond the state's long-arm statute. Jurisdiction over a non-resident

5

defendant must also satisfy the Due Process Clause. *See id.* at 857. Because the SCA is silent as to service of process and the present case was brought in the United States District Court for the Middle District of Florida, we apply the State of Florida's long-arm statute, which states in relevant part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> . . .
> (b) Committing a tortious act within this state.
> . . .
> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, . . . [t]he defendant was engaged in solicitation or service activities within this state;
> . . .
> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193 (2006).

We find no basis to assert jurisdiction over Yarmuth. First, Snow briefly argues that Yarmuth is subject to jurisdiction under § 48.193(1)(b) because it conspired with and acted through its agents DirecTV and Stump, which committed

6

tortious acts in Florida.  Snow relies solely on vague and conclusory allegations[3] presented in his complaint, which are insufficient to establish a prima facie case of personal jurisdiction over Yarmuth.  *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217-18 (11th Cir. 1999) (per curiam) (finding a plaintiff's vague allegations of a conspiracy insufficient to establish an actionable conspiracy subjecting the defendant to personal jurisdiction).  Wilsdon, a Yarmuth partner, submitted an affidavit in which he claims that, while representing DirecTV in Florida courts, he worked with local counsel *retained by DirecTV*.  DirecTV, not Yarmuth, would be the principal in any possible agency relationship that existed among DirecTV, Yarmuth, and Stump, which was retained by DirecTV in some Florida actions.  Snow presents no factual allegations demonstrating an agency relationship where Yarmuth was the principal and Stump was its agent, as would be required to subject Yarmuth to jurisdiction in Florida for Stump's actions.  Accordingly, we find no basis to subject Yarmuth to personal jurisdiction under § 48.193(1)(b).

Equally unpersuasive is Snow's argument for jurisdiction under § 48.193(1)(f).  Snow argues that under the statute's plain language Yarmuth is

---

[3] For example, the only allegation that mentions acts committed in Florida states: "DIRECTV, STUMP, and YARMUTH have committed, and conspired to commit, acts and have acted alone and in concert to commit acts within the State of Florida . . . relevant to and giving rise to the claims herein."

7

subject to jurisdiction because it caused injury to him in Florida.[4]  However, we are required to read the statute as the Florida Supreme Court would.  *Cable/Home Commc'n*, 902 F.2d at 856.  The Florida Supreme Court has held that § 48.193(1)(f) applies only when a defendant's out of state actions cause personal injury or damage to physical property in the State of Florida.  *See Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 511 So. 2d 992, 994 (Fla. 1987).  Because Snow does not allege that he sustained any personal injury or damage to his physical property, Yarmuth cannot be reached under § 48.193(1)(f).

Finally, Snow argues that the statute's general jurisdiction provision applies to Yarmuth.  *See* Fla. Stat. § 48.193(2) (2006).  General jurisdiction does not require a connection between a defendant's activities and the cause of action. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 n.9, 104 S. Ct. 1872 n.9, 80 L. Ed. 2d 404 (1984).  Florida courts have held the term "substantial and not isolated activity" used in § 48.193(2) means "continuous and systematic general business contact" with Florida, a term used by the Supreme Court in *Helicopteros* to determine whether general jurisdiction was permissible

---

[4] A Yarmuth employee admitted to accessing Snow's website, which was hosted on Globat's servers.  The employee was in Seattle, Washington.  According to documentation submitted by Yarmuth that was not disputed by Snow, Globat's servers were located in California.  Snow claims that the unauthorized access of the website caused injury in Florida because he was physically located in Florida.

8

under the Due Process Clause. *See Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. Dist. Ct. App. 1999); *Helicopteros*, 466 U.S. at 415-16, 104 S. Ct. at 1872-73.

Snow's complaint states that Yarmuth, its shareholders and associates have been conducting business in Florida and in Florida courts on DirecTV's behalf and in conjunction with Stump. Yarmuth does not argue that it has no contacts with Florida, but claims that its contacts are few. According to Wilsdon's affidavit, Yarmuth is a law firm organized and located solely in Seattle, Washington. It has never maintained any physical presence (e.g., office, mailing address, or registered agent) in Florida, nor has it ever solicited clients in Florida. None of its attorneys are admitted to the Florida bar. Wilsdon also states, however, that Yarmuth has represented four Florida-based clients in matters pending in Washington's state courts. Its attorneys have conducted pre-litigation negotiations through telephone communications, electronic mail, and traditional mail with many Florida residents suspected of pirating DirecTV's satellite signal,[5] and have represented DirecTV in three piracy-related cases in Florida. According to Wilsdon, Yarmuth's representation of Florida clients and of DirecTV in Florida cases generated less than one percent of the law firm's total revenue.

---

[5] Wilsdon states that the number is unknown. Snow claims many.

Snow counters that Wilsdon understated Yarmuth's ties with Florida. Snow provided documentation showing Yarmuth attorneys listed as the counsel of record in four Florida cases other than the ones listed by Wilsdon.[6] Snow also submitted documentation showing DirecTV was a party in 1,820 lawsuits in the federal district courts in Florida. Snow presented no evidence linking Yarmuth to these cases.

Based on the allegations, the affidavits, and the supporting documentation, we find no "continuous and systematic" contacts sufficient to subject Yarmuth to general jurisdiction in Florida. Any suggestion that Yarmuth was involved in all 1,820 of DirecTV's Florida cases is speculation. Yarmuth's negotiations on DirecTV's behalf with some Florida residents, its seven appearances as counsel of record for DirecTV, and its representation of four Florida clients in Washington courts are not enough to establish general jurisdiction, when balanced against Yarmuth's lack of a physical presence in Florida, its non-solicitation of Florida clients, and its deriving less than one percent of its revenues from matters connected with Florida. Yarmuth falls outside the scope of § 48.193(2).

Because Yarmuth is not subject to jurisdiction under Florida's long-arm

---

[6] Snow's attorney also provided an affidavit and transcript documenting a Yarmuth attorney's attempt to depose in Florida a witness subpoenaed in connection with a case pending in the Southern District of Iowa.

statute, we need not address whether the Due Process Clause permits jurisdiction.

We affirm the grant of Yarmuth's motion to dismiss.

## B.    Dismissal of Snow's Complaint for Failure to State a Claim

We now turn to the motion to dismiss for failure to state a claim.  We hold

that Snow did not allege the material elements necessary to state a claim under the

SCA.  Our analysis begins with a general discussion of pleading standards.  We

then address the requirements of stating a claim under the SCA, and finally

conclude our analysis by examining the four corners of Snow's complaint.

*1.    Pleading Standards*

All facts set forth in a plaintiff's complaint are to be accepted as true.

*Oxford Asset Mgmt.*, 297 F.3d at 1188.  A complaint will not be dismissed "unless

it is plain that the plaintiff can prove no set of facts that would support the claims

in the complaint."  *Id.*  "However, conclusory allegations, unwarranted deductions

of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Id.*;

*see also Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) ("[W]e will not

accept inferences drawn by plaintiffs if such inferences are unsupported by the

facts set out in the complaint . . . .") (quotations omitted).  "[Our] duty to liberally

construe a plaintiff's complaint in the face of a motion to dismiss is not the

equivalent of a duty to re-write it for [the plaintiff]."  *Peterson v. Atlanta Hous.*

11

*Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

Rule 8(a) requires that the complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A plaintiff need not plead specific facts for *every* element of a cause of action. *See Roe v. Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678, 683 (11th Cir. 2001); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir.1986). However, a complaint must still contain either direct or inferential allegations respecting all *material* elements of a cause of action. *See Aware Woman Ctr.*, 253 F.3d at 684; *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 1981). "Thus, at a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the *material* elements necessary to sustain a recovery under some viable legal theory." *Aware Woman Ctr.*, 253 F.3d at 684 (emphasis added).

*2.     Stating a Claim under the SCA*

The SCA was included as Title II of the Electronic Communications Privacy Act of 1986 ("ECPA"), Pub. L. No. 99-508, 100 Stat. 1848 (codified as amended in scattered sections of 18 U.S.C.). The ECPA was enacted to update the then existing federal wiretapping law to protect the privacy of the growing number of electronic communications. *See* 132 Cong. Rec. H4039 (1986) (statement of Rep.

12

Kastenmeier). Since its inception, the ECPA provided "several clear exceptions to the bar on interception so as to leave unaffected electronic communication made through an electronic communication system designed so that such communication is readily available to the public ." 131 Cong. Rec. S11790-03 (1985) (statement of Sen. Leahy on a bill that was the precursor to the ECPA); *see also* 131 Cong. Rec. E4128 (1985) (statement of Rep. Kastenmeier on the same bill).

Indeed, the ECPA explicitly reads, "It shall not be unlawful under this chapter or chapter 121 of this title for any person–(i) to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is *readily accessible to the general public*." 18 U.S.C. § 2511(2)(g) (emphasis added). Chapter 121 refers to the SCA. ECPA § 201. The legislative history and the statutory structure clearly show that Congress did not intend to criminalize or create civil liability for acts of individuals who "intercept" or "access" communications that are otherwise readily accessible by the general public.

Through the World Wide Web, individuals can easily and readily access websites hosted throughout the world. Given the Web's ubiquitous and public nature, it becomes increasingly important in cases concerning electronic communications available through the Web for a plaintiff to demonstrate that those

communications are not readily accessible. If by simply clicking a hypertext link, after ignoring an express warning, on an otherwise publicly accessible webpage, one is liable under the SCA, then the floodgates of litigation would open and the merely curious would be prosecuted. We find no intent by Congress to so permit. Thus, the requirement that the electronic communication not be readily accessible by the general public is material and essential to recovery under the SCA. *Cf. Aware Woman Ctr.*, 253 F.3d at 683-84 (treating the motive requirement of the Freedom of Access to Clinic Entrances Act ("FACE") as an essential element of a FACE claim because the motive requirement filters out conduct that Congress believes is not covered by FACE).

In addition to the "readily accessible" element, a valid civil complaint under the SCA must allege a violation of one of its provisions. *See* 18 U.S.C. 2707(a) ("[Any person] aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover . . . ."). The provision at issue in the present case states, "[Whoever] (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains . . . a wire or electronic communication while it is in electronic storage [violates the

14

SCA]." 18 U.S.C. § 2701(a).

3.    *Snow's Complaint*

To survive a motion to dismiss, Snow must have alleged, at a minimum, facts from which we could infer that his electronic bulletin board was not readily accessible to the general public. Snow states that his website was a "non-commercial private support group" website. This conclusory allegation, however, provides little insight into whether the website is configured so that the communications in the electronic bulletin board are not readily accessible. Snow proceeds in his complaint to describe the process by which one gains access to the electronic bulletin board.

According to the complaint, a person must register and create a password to enter into and participate in the electronic bulletin board. Before registering and logging into the electronic bulletin board, the proposed registrant is shown a notice that requires the registrant to affirm his non-association with DirecTV. Two options appear at the end of the notice: "I Agree to these terms" and "I do not agree to these terms." "If a person clicks on 'I Agree to these terms', that person is allowed to enter into, view and participate in the electronic bulletin board within the SCE Web site." In sum, to access the electronic bulletin board messages, all

15

one needs to do is register, create a password, and click "I Agree to these terms."[7]

Nothing inherent in any of these steps prompts us to infer that access by the general public was restricted. Indeed, the facts alleged in Snow's complaint lead us to infer the opposite. We conclude this case is distinguishable from *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002), a Ninth Circuit case upon which Snow relies heavily. In *Konop*, plaintiff Konop created a list of Hawaiian Airlines employees who were eligible to access the website. *Id.* at 872. To gain access, one had to enter an eligible employee's name, create a password, and click "SUBMIT" indicating acceptance of the terms and conditions, which prohibited users from disclosing the website's contents and prohibited viewing by Hawaiian Airlines management. *Id*. at 872-73. In contrast, Snow alleged that registrants needed only to create a password and acknowledge that they were not associated with DirecTV or another prohibited entity. Konop's website, unlike Snow's, required users wishing to view the electronic bulletin board's contents to have knowledge (an eligible employee's name) that was not publicly available. Snow had no such limitation. In order to be protected by the SCA, an Internet website

_____

[7] At oral argument, Snow stated that he prevented individuals from accessing his website who used web-based, anonymous email accounts or computers with IP addresses assigned to DirecTV. This argument does not change our analysis. Such facts cannot be inferred from the complaint, which only alleges that "the integrity of the Web site and the privacy of its visitors" was maintained by warning notices forbidding access by DirecTV and its agents.

must be configured in some way so as to limit ready access by the general public.

To be clear, we do not require a plaintiff to "plead in grave detail" all of a website's restrictive technical configurations, as intimated by Snow's attorney at oral argument. Here, a short simple statement that the plaintiff screens the registrants before granting access may have been sufficient to infer that the website was not configured to be readily accessible to the general public. However, Snow failed to make this or any remotely similar allegation. Instead, Snow's allegations describe, in essence, a self-screening methodology by which those who are not the website's intended users would voluntarily excuse themselves. Because this is insufficient to draw an inference that the website is not readily accessible to the general public, Snow's complaint fails to state a cause of action and it was proper to dismiss it.

Accordingly, we affirm the district court's grant of the defendants' motion to dismiss for failure to state a claim.

## IV. CONCLUSION

We affirm both the district court's grant of Yarmuth's motion to dismiss for lack of personal jurisdiction and the defendants' joint motion to dismiss for failure to state a claim.

**AFFIRMED.**

17