[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11961
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-24386-KMW


BRIGITTE CASTILLO,

Plaintiff - Appellant,

versus

ALLEGRO RESORT MARKETING,
OCCIDENTAL HOTEL AND RESORTS,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 18, 2015)

Before MARCUS, WILLIAM PRYOR and JILL PRYOR, Circuit Judges.

PER CURIAM:

Brigitte Castillo, proceeding *pro se*, appeals the district court's dismissal with prejudice of her age, sex, and national origin discrimination claims against defendants Allegro Resort Marketing ("Allegro") and Occidental Hotels and Resorts ("Occidental").[1]  After careful review, we affirm in part and reverse and remand in part.

## I.    Background

In 1989, Ms. Castillo, born February 22, 1967 in the Dominican Republic, began working for Allegro, a company that oversees all of the marketing and promotions for several brands of all-inclusive resorts in Aruba, Costa Rica, the Dominican Republic, and Mexico, including Occidental.[2]  Through the years, Allegro promoted Ms. Castillo several times.  She had two children and took maternity leave each time, but she continued to fulfill her duties at Allegro.  On May 29, 2009, with management citing a reduction in force, Ms. Castillo was terminated.  She was 42 years old.

Ms. Castillo filed a complaint before the Equal Employment Opportunity Commission ("EEOC") on October 16, 2009, alleging that both Allegro and

---

[1] Ms. Castillo's notice of appeal to this Court also encompassed the district court's denial of her motion to reopen the case under Rule 60(b)(3) of the Federal Rules of Civil Procedure.  Because she failed entirely to brief the issue on appeal, however, we deem this challenge abandoned. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (emphasizing that, although the pleadings of *pro se* litigants are afforded a liberal construction, even parties proceeding *pro se* must comply with procedural rules).

[2] Because we are tasked with reviewing the district court's dismissal of Ms. Castillo's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, we accept the facts she alleged in her complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Occidental were her employers and that they discriminated against her on the basis of her age, sex, and national origin under the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII").  On September 14, 2012, the EEOC dismissed Ms. Castillo's complaint and issued her a right-to-sue letter.  Ms. Castillo filed her first complaint in federal district court on December 12, 2012.  Allegro and Occidental moved to dismiss, arguing that the complaint failed to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).  Occidental additionally argued that the court lacked personal jurisdiction over it.  Ms. Castillo responded by moving to amend her complaint, and the district court granted her request.  On June 11, 2013, Ms. Castillo filed a first amended complaint.  Allegro and Occidental again moved to dismiss on the same grounds, and this time the district court dismissed Ms. Castillo's complaint based on her failure to (1) plead personal jurisdiction as to Occidental and (2) state a claim for relief against Allegro.  The district court afforded Ms. Castillo leave to file a second amended complaint, however.  On December 16, 2013, Ms. Castillo filed her second amended complaint (the "complaint").  Once again, Allegro and Occidental moved to dismiss on the same grounds.  On February 21, 2014, the district court granted the motions and dismissed the complaint with prejudice.  This is Ms. Castillo's appeal.

3

## II.    Standard of Review

"We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (internal quotation marks omitted).  We do not, however, accept as true "unwarranted deductions of fact" or legal conclusions.  *Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (internal quotation marks omitted).  Moreover, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The mere possibility that the defendant may have acted unlawfully is insufficient.  *Id.*  We also review *de novo* the district court's dismissal for lack of personal jurisdiction. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009).

## III.    Personal Jurisdiction over Occidental

Ms. Castillo first contests the district court's determination that she had not sufficiently pled personal jurisdiction as to Occidental.  On appeal, she acknowledges (as Occidental averred in the district court) that Occidental is merely

a brand of resorts and not a legal entity; thus, it is incapable of being sued.  It is possible, though, that Ms. Castillo has confused the Occidental brand with Allegro's parent company, Occidental Hotels Management S.L. ("Occidental Hotels"), a limited partnership based in Madrid, Spain.  We need not resolve any apparent confusion, however, because regardless of the entity Ms. Castillo intended to sue, she has failed to allege minimum contacts sufficient to establish personal jurisdiction.

In examining whether personal jurisdiction is proper as to a particular party, we must determine whether the exercise of jurisdiction would be appropriate under the long-arm statute of the relevant state and under principles of due process.  *See Internet Solutions Corp.*, 557 F.3d at 1295.  "The due process inquiry requires us to determine whether the defendant has minimum contacts with the forum state and if the district court's exercising of jurisdiction over that defendant would offend traditional notions of fair play and substantial justice."  *Id.* at 1295-96 (alteration and internal quotation marks omitted).  "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction."[3]  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

---

[3] Ms. Castillo does not allege that Occidental (or Occidental Hotels) is a resident of Florida.

5

We conclude Ms. Castillo failed to meet her initial burden to show that Occidental Hotels had minimum contacts with Florida sufficient to satisfy due process.  *See Internet Solutions Corp*, 557 F.3d at 1295.  In the complaint, Ms. Castillo alleged that Occidental Hotels maintained a central office in Madrid, Spain but employed her in a Miami, Florida office.  Although she alleged that Occidental Hotels had "contacts with [Florida] 24/7 and 365 days a year," she made no specific factual allegations of these contacts.  Her conclusory allegations are insufficient to establish a prima facie case of jurisdiction as to Occidental Hotels.  *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (noting that, when a party relies "solely on vague and conclusory allegations" in a complaint, such allegations are "insufficient to establish a prima facie case of personal jurisdiction").  Because Ms. Castillo failed to plead allegations sufficient to satisfy due process, we need not address personal jurisdiction under Florida's long-arm statute.  Accordingly, Ms. Castillo's claims, to the extent she made them against Occidental Hotels, properly were dismissed.

IV.    Ms. Castillo's Discrimination Claims against Allegro

We turn now to the sufficiency of Ms. Castillo's allegations that Allegro discriminated against her on the basis of her age, sex, and national origin.  The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to [her] compensation,

6

terms, conditions, or privileges of employment, because of such individual's age."

29 U.S.C. § 623(a)(1).  It is similarly unlawful under Title VII to discharge or

otherwise discriminate against an individual "because of such individual's race,

color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff

pursuing a claim under either statute can establish her employer's discrimination

with either direct or circumstantial evidence.  *See Van Voorhis v. Hillsborough*

*Cnty. Bd. of Cnty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008) (ADEA); *Green*

*v. Sch. Bd. of Hillsborough Cnty., Fla.*, 25 F.3d 974, 978 (11th Cir. 1994) (Title

VII).  Direct evidence "reflects a discriminatory or retaliatory attitude correlating

to the discrimination or retaliation complained of by the employee."  *Van Voorhis*,

512 F.3d at 1300 (internal quotation marks omitted).  "Only the most blatant

remarks, whose intent could be nothing other than to discriminate on the [relevant

protected] basis . . . constitute direct evidence of discrimination."  *Id.* (alteration

and internal quotation marks omitted).

To establish intentional discrimination based on circumstantial evidence, this

Court analyzes ADEA and Title VII claims under the *McDonnell Douglas* burden-

shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-

03 (1973).  To begin, the plaintiff must establish a prima facie case of

discrimination by demonstrating that (1) she is a member of a protected class, (2)

she was qualified for the job, (3) she suffered an adverse employment action, and

(4) a similarly situated individual outside her protected class was treated more favorably. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (describing the *McDonnell Douglas* analysis). To withstand a motion to dismiss, however, a plaintiff asserting discrimination under ADEA or Title VII need not allege specific facts establishing a prima facie case of the employer's liability. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). That burden-shifting analysis is an evidentiary standard, not a pleading requirement, and thus it applies only to summary judgment motions and beyond. *Id.* Still, in order to avoid dismissal, a plaintiff's complaint "must provide 'enough factual matter (taken as true) to suggest' intentional . . . discrimination." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## A. National Origin Discrimination Claims

On appeal, Ms. Castillo contends that her allegations of discrimination based on national origin were sufficient, noting that four out of five employees terminated as part of what Allegro deemed a reduction in force were of Dominican descent, including herself. According to Ms. Castillo, the only non-Dominican listed on Allegro's records for the reduction in force was listed improperly because she was contracted for a temporary position and terminated naturally at the conclusion of her contract. But although Ms. Castillo connects the reduction in force to her Dominican origin on appeal, she failed to do so in her complaint.

Indeed, the complaint's only mention of national origin discrimination is the bare allegation that she believed her termination to be based, in part, on her national origin. Her complaint contains no specific facts suggesting intentional discrimination based on her national origin and, therefore, the district court correctly dismissed that claim. *See Ashcroft*, 556 U.S. at 678; *Davis*, 516 F.3d at 974.

### B. Age and Sex Discrimination Claims

In contrast, Ms. Castillo's allegations of discrimination based on her age and sex are more robust. According to the complaint, Allegro's Global Vice President, Luis Namnum, and Vice President of North America, Jorn Kaee, began harassing her in September 2006 (when she was 39 years old) and terminated her on May 29, 2009 because she is female and in her late 30s to early 40s. On September 1, 2006, while Ms. Castillo was working from home on maternity leave, Mr. Namnum criticized her work and told her, "Brigitte, I want a young boy in your position." He told her he would think about what to do with her. Then, on October 20, 2006, Ms. Castillo returned to her Miami office from maternity leave to find a young man named Carlos in her office awaiting training. A couple of weeks later, Mr. Namnum sent Carlos to Ms. Castillo for additional training, telling her that Carlos would take over a portion of her work and stating, "I know it is hard to give your job away, but you must grow even against your will."

9

Throughout the remainder of 2006 and into 2007, Ms. Castillo alleged, Mr. Namnum "ridiculed" and continued to harass her by taking away her phone and fax numbers and her assistant and giving them to Carlos. In July 2007, when the daycare provider for Ms. Castillo's child called the office, Mr. Namnum's assistant told the caller that Ms. Castillo was not in the office, even though she in fact was available. **[*Id.*].** Ms. Castillo alleged that Mr. Kaee then began to harass her; he tried to "forc[e] [her] to sign an employee warning," and when she refused, his assistant signed it and put it in Ms. Castillo's employee file. Mr. Kaee's assistant told Ms. Castillo that "they were looking for three warning[s] in order to fire" her.

According to the complaint, when Ms. Castillo again became pregnant, Mr. Namnum told her that Mr. Kaee "did not want [her] in the office," and the two continued to harass her. The mistreatment continued after she gave birth in January 2008, when Mr. Kaee told her he would pay for only three weeks of maternity leave. Ms. Castillo alleged that she was subjected to efforts "to make [her] fail in [her] job," which are detailed in her complaint. This conduct continued until February 20, 2009, when she met with her new boss, and he told her "all was okay." Just three months later, Mr. Kaee terminated her[4] and replaced

---

[4] Although Ms. Castillo stated in her complaint that Mr. Kaee was not her boss, this statement is not fatal to her claims in the light of her other allegations and her *pro se* status. She alleged that it was Mr. Kaee who ultimately terminated her employment. Because she alleged Mr. Kaee wanted her to leave her job for the reasons his colleague Mr. Namnum articulated, took steps to diminish her role at Allegro and subjected her to continuous harassment, and ultimately made the decision to terminate her, his conduct can be actionable under Title VII and ADEA. *See Maddox*

10

her with a young man named Carlos Cespedes, presumably the same Carlos she was directed to train in 2006.[5]

We conclude that these specific allegations were sufficient to state a claim for age and sex discrimination under ADEA and Title VII.  *See Davis*, 516 F.3d at 974.  In sum, Ms. Castillo alleged that her superiors at Allegro did not want to employ a woman of her age,[6] in part because she was bearing children, taking maternity leave, and taking on additional responsibilities outside the office.  Mr. Namnum told her that he wanted to replace her with a young male and that he and Mr. Kaee wanted her gone; they both worked to have her terminated, harassed her relentlessly, and ultimately replaced her with a younger man (who presumably would not undertake the same family duties), just as Mr. Namnum had told her they would.

The district court concluded that Mr. Namnum's statement to Ms. Castillo that he wanted to give her job to "a young boy" was amenable to multiple interpretations and, therefore, could not constitute direct evidence of

---

*v. Claytor*, 764 F.2d 1539, 1546 (11th Cir. 1985) (requiring that a plaintiff pursuing an employment discrimination claim establish discriminatory motive "on the part of the decisionmaker").

[5] The district court stated it was unclear from the record whether Carlos Cespedes is the same man whom Ms. Castillo helped train in 2006.  But the district court failed to note the complaint's allegation that the man she trained was named Carlos.  Construing her pleadings liberally, we accept that the two references refer to the same individual.

[6] ADEA applies to individuals who are least 40 years of age.  29 U.S.C. § 631(a).  Thus, although Ms. Castillo's ADEA claim could not apply to the harassment she alleges she endured beginning in 2006, it would apply to harassment after February 22, 2007 (her 40th birthday) and to her termination.

11

discrimination.  This reasoning fails to take into account the abundant related factual allegations Ms. Castillo asserted.  At a minimum, these allegations could, through discovery, yield circumstantial evidence of intentional discrimination.  *See Van Voorhis*, 512 F.3d at 1300; *Green*, 25 F.3d at 978.  And the district court's conclusion that Ms. Castillo must, at this stage, satisfy the prima facie showing required by *McDonnell Douglas* is inconsistent with Supreme Court precedent. *See Swierkiewicz*, 534 U.S. at 510.  Thus, we conclude the district court erred in granting Allegro's motion to dismiss Ms. Castillo's claims of age and sex discrimination.

## V.

For the foregoing reasons, we affirm in part and reverse in part, and we remand the case for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

12