[DO NOT PUBLISH]

## In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-12079

Non-Argument Calendar

_____

WORLD MEDIA ALLIANCE LABEL, INC.,

Plaintiff-Appellant,

*versus*

BELIEVE SAS,
a.k.a. Believe Co.,
a.k.a. Believe,
a.k.a. Believe Digital,

Defendant-Appellee,

YOUTUBE, LLC, et al.,

2                      Opinion of the Court                    24-12079

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cv-21894-FAM

_____

Before LAGOA, MARCUS, and WILSON, Circuit Judges.

PER CURIAM:

World Media Alliance Label, Inc. ("WMA") is a Sunny Isles Beach-based company that has contractual rights with musical artists and groups, owning the rights to the use of certain materials. In 2023, WMA brought this copyright infringement case -- concerning the content of a Russian music group called Tender May -- against Believe SAS ("Believe"), YouTube, and Google. Pursuant to a stipulation, WMA voluntarily dismissed YouTube and Google, making Believe, a French digital music company, the remaining defendant. Believe then moved to dismiss the complaint for lack of personal jurisdiction, and the district court agreed, concluding that WMA had failed to allege that there was specific or general jurisdiction over Believe under Florida's long-arm statute. WMA later moved for reconsideration under Federal Rule of Civil Procedure 59(e), and the district court denied the motion.

On appeal, WMA argues that: (1) the district court erred in dismissing the complaint for lack of personal jurisdiction; (2) the

district court abused its discretion in disregarding its request for jurisdictional discovery; and (3) the district court abused its discretion in denying its Rule 59(e) motion. After careful review, we affirm.

## I.

The relevant background is this. Tender May is a cult Soviet and Russian pop group in Orenburg, Russia. At its peak in the late 1980s, Tender May gathered stadiums of 40,000–60,000 people and set records for the number of concerts per day. The band is associated with a singer, composer, manager, and producer named Andrei Razin, who initially funded the group. WMA is affiliated with Razin under contracts, and as a result of this affiliation, it claims to hold copyright to Tender May's audio and video recordings, which it says makes it the designated copyright agent for Tender May and Razin, under the terms of the Digital Millennium Copyright Act.

For its part, Believe, says that Tender May, as a band, never transferred rights to any of its performances to Razin and that in 2022, Russian courts decided that Razin had no ownership rights in any of Tender May's works. In Believe's view, ownership rights to the songs in question are still being litigated in Russian courts, in conflict with WMA's claims of ownership in the United States.

The dispute underlying the instant case arose when Believe listed forty-four of Tender May's works on YouTube, which WMA argues infringed its alleged copyright ownership in the works. Among other things, WMA's complaint claimed that its intellectual property assets were "infringed, usurped, and attacked" and sought injunctive relief for copyright infringement under 17 U.S.C. Ch. 5;

$11,000,000 in damages under 17 U.S.C. § 504; costs and attorney fees under 17 U.S.C. § 505; and a claim for interference with beneficial business relationships.

## II.

We review *de novo* the district court's dismissal of a complaint for lack of personal jurisdiction, accepting the allegations in the complaint as true. *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023). We review the district court's "denial, grant, or limitation of a motion for discovery . . . for abuse of discretion." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280 (11th Cir. 2009) (citation modified). We also review the denial of a motion for reconsideration for abuse of discretion. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009).

For starters, we are unpersuaded by WMA's argument that the district court erred in dismissing the complaint for lack of personal jurisdiction. As we've long recognized, a court must have personal jurisdiction over the parties in a case because "[a] court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). In this case, Believe is a nonresident defendant, so WMA must establish a prima facie case of personal jurisdiction and "present[] enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Vague and conclusory allegations do not satisfy this burden. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015).[1]  A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: (1) through acts "that subject a defendant to *specific* personal jurisdiction -- that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida"; or (2) through "*general* personal jurisdiction -- that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida -- if the defendant engages in 'substantial and not isolated activity' in Florida." *Id.* at 1204 (citing Fla. Stat. § 48.193(1)(a), (2)).

Here, however, WMA failed to allege personal jurisdiction over Believe under either avenue of Florida's long-arm statute. WMA did not allege specific personal jurisdiction.  Under the statute, an entity is subject to specific personal jurisdiction if, among other things, it "[c]ommit[s] a tortious act within this state." Fla.

---

[1] To the extent WMA claims that it did not need to satisfy Florida's long-arm statute because it was proceeding under federal law, this argument goes to *subject-matter* jurisdiction, which no one disputes, rather than *personal* jurisdiction.  *Both* subject-matter jurisdiction *and* personal jurisdiction "must be met before a court has authority to adjudicate the rights of parties to a dispute." *Dykes v. Hosemann*, 743 F.2d 1488, 1496 (11th Cir. 1984), *on reh'g*, 776 F.2d 942 (11th Cir. 1985) (citation modified).

Stat. § 48.193(1)(a)(2).[2]  This provision establishes specific personal jurisdiction "concern[ing] a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action."  *Louis Vuitton Malletier, SA. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013).  Thus, jurisdiction under § 48.193(1) requires a "connexity" or connection "between the enumerated activity in Florida and the plaintiff's cause of action."  *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1228 (11th Cir. 2023) (quotations omitted).

In this context, for us to find a "tortious act," a plaintiff must plead sufficient facts to show that copyright infringement was committed in the state of Florida.  To do so, the Florida Supreme Court has required a plaintiff to demonstrate, at a minimum, that any material at issue was both *accessible* in Florida and *actually accessed* by people in the state.  *See Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010).  In *Internet Solutions*, the Florida Supreme Court addressed whether a nonresident's allegedly defamatory posts on a website subjected her to personal jurisdiction in Florida

---

[2] Another prong of the statute provides specific jurisdiction where a nonresident defendant engages in a business venture in Florida. Fla. Stat. § 48.193(1)(a)(1). WMA cites in its brief four "[f]actors to consider in determining whether a nonresident defendant is carrying on business in Florida as the basis for long-arm jurisdiction." It lists them as: "(1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients." After that, it says that "[a]ll these factors are applicable in the present case." But none of these factors is pled in the complaint, nor are they even discussed with any detail at all in the complaint or WMA's briefing. *See Snow*, 450 F.3d at 1318.

24-12079              Opinion of the Court                7

under the long-arm statute. *Id*. at 1215. It held that to assert jurisdiction, the party suing for defamation had to make a prima facie showing that "the material posted on the website about a Florida resident must not only be *accessible* in Florida, but also be *accessed* in Florida in order to constitute the commission of the tortious act of defamation within Florida under section 48.193(1)(b)." *Id*. at 1203.[3] The Florida Supreme Court ultimately concluded that the allegedly defamatory content posted on a website in that case was accessed in Florida where, through exhibits to the complaint, the plaintiff showed that a number of those who commented on the posts "appeared to be from Florida." *Id*. at 1203–04, 1215.[4]

Here, WMA's complaint says that "[j]urisdiction is proper," while acknowledging that Believe "has no registration in Florida" and is based out of France. WMA adds that venue is proper

---

[3] Although *Internet Solutions* arose in the context of defamation, its discussion involved postings on the World Wide Web generally -- analyzing when "a posting on a website, which is located on the World Wide Web, constitutes an electronic communication into Florida." *Id*. at 1210–15. Its holding has been applied to various other contexts, including claims like trademark infringement. *See, e.g.*, *HSC Organics LLC v. Bymaster*, No. 8:21-CV-1852-WFJ-CPT, 2022 WL 2275171, at *4 (M.D. Fla. June 23, 2022) (collecting cases).

[4] *See also Del Valle v. Trivago GMBH*, 56 F. 4th 1265, 1274 (11th Cir. 2022) (Florida's long-arm statute satisfied where the defendants "allegedly trafficked in . . . confiscated properties by profiting from web traffic generated by Florida residents'" interest in the properties and reservations through the defendants' websites); *Louis Vuitton*, 736 F.3d at 1354 (Florida's long-arm statute satisfied where the defendant's "tortious acts . . . caused injury in Florida and thus occurred there because [the] trademark infringing goods were not only accessible on the website, but were sold to Florida customers through that website").

because "WMA, a Florida corporation, has copyright, and infringement of their rights has effect in Florida, where WMA is deprived of a portion of their revenues." This bare claim does not establish the requisite prima facie case of personal jurisdiction.

Notably, WMA never alleged in the complaint that the YouTube videos at issue were accessible in Florida. Nor did it allege that anyone in Florida actually accessed them. On appeal, all WMA says is that it "submitted" information showing that "Believe uses material owned by WMA on YouTube in the USA, specifically in Florida, where WMA is registered"; that Believe is a foreign company that "illegally use[s] videos on YouTube, including for the audience in the U.S. and particularly in Florida"; and that "[w]hile acting out of France, Believe has been using tactics that can be compared to piracy in cyberspace . . . [and that] affected the residents of Florida, therefore allowing a U.S. District Court for the Southern District of Florida to assert jurisdiction."

These claims -- which do not appear as allegations in the complaint -- are plainly insufficient. At most, WMA suggests that Florida's (and all other states') residents might have access to the allegedly infringing work online, but it does not state that Florida residents have actually accessed it. Without any allegation that Believe engaged in potentially tortious conduct in the state of Florida, WMA has failed to allege specific personal jurisdiction under Florida's long-arm statute. The district court did not err in holding there was no specific personal jurisdiction over Believe.

Nor did the district court err in concluding that WMA failed to allege general personal jurisdiction over Believe. General personal jurisdiction stems from a "defendant's substantial activity in Florida without regard to where the cause of action arose." *Louis Vuitton*, 736 F.3d at 1352. "A defendant who is engaged in substantial and not isolated activity within [Florida] . . . is subject to the jurisdiction of [its] courts . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). In other words, the defendant must have engaged in "continuous and systematic general business contact" with Florida. *Snow*, 450 F.3d at 1318.

As this standard indicates, general personal jurisdiction over nonresident defendants is not to be lightly presumed. So, for example, in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court ruled that California courts had no general jurisdiction over Germany-based Daimler -- when its subsidiary, Mercedes-Benz USA had multiple facilities in California and was the largest supplier of luxury vehicles to the California market, and California accounted for 2.4% of Daimler's worldwide sales. *Id*. at 123. Even so, the Daimler entity itself was found to lack "affiliations with the State [that] [we]re so continuous and systematic as to render it essentially at home in the forum State." *Id*. at 139 (citation modified); *see also Carmouche*, 789 F.3d at 1204 (no general jurisdiction over Panama-based defendant despite it "having a Florida bank account and two Florida addresses . . . , purchasing insurance from Florida companies, filing a financing statement with the Florida Secretary of State, joining a non-profit trade organization based in Florida, and consenting to the jurisdiction of the Southern District of

Florida for all lawsuits arising out of its agreements with Carnival"); *Fraser v. Smith*, 594 F.3d 842, 844–47 (11th Cir. 2010) (no general jurisdiction over Turks/Caicos-based defendant although it maintained a website accessible from Florida, advertised in the Miami Herald, procured insurance through a Florida agent, purchased about half its boats in Florida, and sent employees/representatives to Florida for training and to promote its services).

In this case, WMA's complaint nowhere alleges how or why Florida is the appropriate jurisdiction for Believe. According to the complaint, Believe is not located in Florida, nor does it own property or regularly conduct business in Florida. Further, the complaint acknowledges that Believe "is a French type business entity registered in France," "enacted under the French law," and "has no registration in Florida." In other words, WMA admits that Believe is a French corporation registered in France with no specific ties with Florida, and -- other than claiming that *WMA* suffered damages in Florida, which says nothing about *Believe*'s ties to Florida -- WMA never alleges any "substantial" contact between Believe and Florida that would give rise to general personal jurisdiction.

Moreover, because WMA has not alleged specific or general personal jurisdiction under Florida's long-arm statute, the district court properly dismissed the complaint on that basis alone without reaching due process. *See Snow*, 450 F.3d at 1319 ("Because [the defendant] is not subject to jurisdiction under Florida's long-arm statute, we need not address whether the Due Process Clause permits jurisdiction. We affirm the grant of [the] motion to dismiss.").

24-12079               Opinion of the Court                    11

Accordingly, we affirm the district court's dismissal of WMA's case against Believe for lack of personal jurisdiction.

III.

We also find no merit to WMA's claim that the district court abused its discretion in disregarding its request for jurisdictional discovery. We've held that a district court does not abuse its discretion by denying jurisdictional discovery if "the complaint was insufficient as a matter of law to establish a *prima facie* case that the district court had jurisdiction." *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009). Nor does a district court abuse its discretion in rejecting jurisdictional discovery where the plaintiff "never formally moved the district court for jurisdictional discovery" and instead just "buried such requests in its briefs as a proposed alternative to dismissing" the defendant. *Mazer*, 556 F.3d at 1280–81.

As we've explained, WMA did not meet its initial burden to allege a prima facie case of personal jurisdiction. WMA never filed a formal motion for jurisdictional discovery -- instead, it put the request at the end of its response to the motion to dismiss. Nor, even more telling, did WMA did give the district court an explanation as to why jurisdictional discovery was needed or what facts it intended to discover. All it said, on the penultimate page of its opposition to the motion to dismiss is this: "[T]he plaintiffs have made a voluminous threshold showing that the defendants are subject to the jurisdiction of this Court. If that is insufficient, the Plaintiffs should be entitled to jurisdictional discovery."

Here, as in *Mazer*, "[t]he district court . . . did not so much deny discovery as it dismissed the case before discovery was taken. We cannot say that the district court erred, much less abused its discretion." *Id*. (citation modified).  Thus, we affirm as to this issue as well.

IV.

Finally, we are unconvinced by WMA's argument that the district court abused its discretion in denying its post-dismissal motion for relief under Fed. R. Civ. P. 59(e).  Under this Rule, a party may, no later than 28 days after entry of a judgment, move a district court to alter or amend it.  Fed. R. Civ. P. 59(e).  "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact."  *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1287 (11th Cir. 2021) (alteration in original).

However, a party cannot "use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."  *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) (affirming the denial of a motion for reconsideration where a party "did nothing but ask the district court to reexamine an unfavorable ruling").  "This prohibition includes new arguments that were previously available, but not pressed."  *Wilchombe*, 555 F.3d at 957 (citation modified).  As we've explained, if the district court were to entertain these past-due arguments, it would amount to a waste of judicial resources and prevent the finality necessary to the judicial

24-12079                Opinion of the Court                13

process. *See Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990) ("A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.").

Here, the district court did not abuse its discretion in denying WMA's motion for reconsideration. To the extent WMA tries to characterize the 340 pages attached to its motion as "new" evidence, we disagree. As the record reflects, none of the purportedly "new evidence" related to the issue of personal jurisdiction, nor was any of it actually "new." And in any event, as we've explained, evidence only going to the merits does not enter into our analysis unless the plaintiff has satisfied its initial burden of making a prima facie showing of personal jurisdiction in its pleading. WMA has not done that. Rather, WMA has repeated its barebones request for jurisdictional discovery, still failing to show why it is entitled to any kind of relief.[5]

**AFFIRMED.**

---

[5] WMA lastly argues -- only in its reply brief -- that the district court abused its discretion in denying it leave to amend. Because WMA did not make this argument in its initial brief, it is forfeited. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court." (quoting *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994))). We also note that "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009).